# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| WESLEY IRA PURKEY, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | No. 06-8001-CV-W-FJG |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MOTION FOR LEAVE TO CONDUCT
## DISCOVERY AND SUPPORTING MEMORANDUM

Wesley I. Purkey, by undersigned counsel, pursuant to the Fourth, Fifth, Sixth,

Eighth and Fourteenth Amendments to the United States Constitution, and pursuant to

Rule 6 of the Rules Governing §2255Proceedings, files his initial Motion for Leave to

Conduct Discovery and Supporting Memorandum. This request for leave to conduct

discovery, which includes requests for the production of records, documents, and

evidence, is necessary for the investigation and presentation of the constitutional claims

to be raised in Mr. Purkey's 28 U.S.C. §2255 motion. Further discovery requests will

likely be forthcoming once the Court has ruled upon this initial discovery request and

Mr. Purkey has had a reasonable opportunity to conduct whatever discovery, if any,

this Court determines is appropriate.

As a general matter, discovery is authorized by Rule 6 of the Rules Governing 28 U.S.C. § 2255 Proceedings. The requested discovery as set forth in more detail below is essential to guarantee Mr. Purkey a full and fair opportunity to discover, develop and fairly present in his § 2255 motion (and any subsequent amendments to that motion) all possible constitutional claims for relief in his case and the factual bases for such claims. The contents of any § 2255 motion filed prior to the authorization of such discovery (and sufficient time thereafter to investigate fully all possible leads arising from such discovery) will necessarily be incomplete both as to the scope and content of the claims to be presented as well as to the underlying factual predicate for any claims that are presented in the initial § 2255 motion. In addition, unless the Court authorizes undersigned counsel, on behalf of Mr. Purkey, to conduct such discovery, this Court will be deprived of any meaningful opportunity to review and resolve all such claims and their underlying factual bases.

For these reasons, Mr. Purkey requests that this Court resolve the issues contained in this and any subsequent motion for discovery prior to foreclosing Mr. Purkey from a final opportunity to amend his § 2255 motion, and prior to the scheduling of an evidentiary hearing on any of the claims set forth in Mr. Purkey's amended motion.

# I. <u>LEGAL AUTHORITY FOR DISCOVERY</u>

## A. Introduction

Rule 6 of the Rules Governing § 2255 Proceedings for the United States District Courts gives this Court express authority to order discovery:

> A party may invoke the processes of discovery available under the Federal Rules of Criminal Procedure[1] or elsewhere in the usages and principles of law if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

Rule 6(a) incorporates the United States Supreme Court's directive that a federal habeas corpus petitioner is "entitled to careful consideration and plenary processing of [his claims,] including full opportunity for presentation of the relevant facts." *Harris v. Nelson*, 394 U.S. 286, 298 (1969); *see also Blackledge v. Allison*, 431 U.S. 63, 82-83 (1977); *cf.* Rules Governing § 2254 Cases in the United States District Courts, Advisory Committee Note to Rule 6 ("Subdivision (a) is consistent with *Harris v. Nelson*").[2]

---

[1] The corresponding discovery rule for § 2254 includes the processes of discovery available under both the Federal Rules of Criminal Procedure and the Federal Rules of Civil Procedure.

[2] The Advisory Committee Notes to the Rules Governing § 2254 Cases in the United States District Courts are "fully applicable to discovery under [the analogous Rule] for § 2255 motions." Advisory Committee Notes to Rule 6, Rules Governing § 2255 Proceedings for the United States District Courts.

## B. Good Cause

The Court may grant § 2255 movants such as Mr. Purkey leave to conduct discovery when "good cause" for doing so is shown. Under guiding principles set out by the United States Supreme Court, "good cause" for discovery in *habeas corpus* proceedings is established "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-909 (1997).[3] The *Bracy* Court addressed issues related to Habeas Rule 6 in considerable detail, and it is worth recounting that discussion here.

William Bracy was convicted of capital murder and sentenced to death before Cook County Circuit Judge Thomas J. Maloney in 1981. *Bracy v. Gramley*, 81 F.3d 684, 687 (7th Cir. 1995) (hereinafter *"Bracy I"*), *rev'd*, 520 U.S. 899 (1997) (hereinafter *"Bracy II"*). Judge Maloney accepted bribes from criminal defendants in his court, and in return for the bribes, he arranged for the defendants to be acquitted or convicted of lower-grade offenses. *Bracy II*, 520 U.S. 906-08; *see also United States v. Maloney*,

---

[3] By contrast, the Supreme Court has indicated that such good cause is absent when the petitioner's allegations are patently frivolous (*i.e.*, the product of "fantasy which has its basis in the paranoia of prison rather than fact." *Harris*, 394 U.S. at 300).

71 F.3d 645 (7th Cir. 1995) (upholding Maloney's federal conviction on racketeering, extortion, and obstruction of justice charges), *cert. denied*, 519 U.S. 927 (1996).

The judge fixed cases tried shortly before Bracy's case and shortly after, in each case skewing his rulings in order to ensure the acquittal (or the conviction on reduced charges) of murder defendants. *Id.* Mr. Bracy did not bribe Judge Maloney. *Id.* In his *habeas* petition, Mr. Bracy alleged that Judge Maloney had ruled against him on several discretionary matters in order (1) to "compensate" for his pro-defendant rulings in cases that had been fixed; and (2) to encourage criminal defendants to bribe him in fear of what would happen to them if they did not. *Bracy I*, 81 F.3d at 684. Mr. Bracy asked for discovery under Habeas Rule 6(a) "so that [he] can try to find out whether there was actual bias by Judge Maloney at their trial." *Id.* at 690. To that end, Mr. Bracy sought access to documents revealing the disposition of cases before Judge Maloney, depositions of persons who could describe the judge's behavior in the cases where he did not receive bribes, and for evidence from the federal prosecution of Judge Maloney that would indicate Judge Maloney's behavior in non-bribe cases.

The Seventh Circuit upheld the District Court's decision to deny all three forms of discovery. First, the *Bracy I* court described Mr. Bracy's theory of "compensatory bias" as speculation. *See Bracy I* at 690. The Seventh Circuit theorized that the "compensatory bias" theory might be incorrect. After all, the jury, not Maloney,

5

convicted Mr. Bracy and sentenced him to death. *Id.* Further, assuming Maloney did rule harshly for the state in non-bribery cases while ruling conspicuously for the defendant in bribery cases, a pattern of compensatory bias might actually "create a pattern of inconsistent rulings that would lead people to suspect he was on the take." *Id.* On the other hand, the court mused, Maloney might have followed a policy of always being lenient towards defendants in order to generate consistent rulings, but by doing so would risk being voted out of office by a crime-weary public. *Id.*

The Seventh Circuit freely acknowledged that it was "speculating about the likely impact of Maloney's corruption on the rulings that he made at the trial of these petitioners." *Id.* It rationalized, however, that the "defendants are speculating too." *Id.* at 690. These passages, in which the court hypothesized that the theory the petitioners sought to prove by discovery might not be true, set the stage for the denial of Mr. Bracy's discovery request. The court derided Mr. Bracy's request as a "fishing expedition" that might reveal a pattern of compensatory bias, but which might "not show that [Maloney] followed the practice in [Mr. Bracy's] case." After all, the court, again, speculated, "This may be a case in which any judge would have ruled in favor of the Government in the instances of which the defendants complain." *Id.*

The majority's approach provoked a painstaking dissent by Seventh Circuit Judge Ilana Diamond Rovner. Judge Rovner noted that Mr. Bracy had actually

6

presented evidence, which was utterly ignored by the majority, that Judge Maloney did in fact rule harshly against defendants who did not bribe him. *Id.* at 697 (*citing* transcript of Maloney's trial). She agreed that it was possible that the majority's speculative theory that Judge Maloney would *not* have been harsher to defendants in non-bribery cases might be true. However, she stressed, the time for such speculation is "*after* an evidentiary hearing on the matter, when the petitioners have had the opportunity to find and present whatever evidence there may be to establish any practice Maloney may have followed." *Id.* (emphasis added). "Without giving Bracy and Collins [Bracy's co-defendant] the opportunity to present that evidence," Judge Rovner continued, "their claim of conflict can only be resolved on the basis of speculation, as my colleagues agree." *Id.* Judge Rovner put the point precisely:

> We cannot simply assume that the "probability is slight" that discovery will yield Bracy and Collins anything. Let them try. If their discovery proves fruitless, we can at least take comfort in the knowledge that we have given them every opportunity to prove that Maloney's corruption deprived them of a fair trial. We cannot, after all, have it both ways: we cannot criticize Bracy and Collins for speculation and at the same time deprive them of the chance to render their theory anything more.

*Id.*; *see also Carney v. United States*, 50 F.3d 1097, 1103 (1st Cir. 1995) (Bownes, J. dissenting) (chiding majority for concluding that petitioner had not produced evidence documenting any effect on his trial stemming from the conflict of interest he alleged: "I

hardly find [the majority's statement] surprising; there was no evidentiary hearing at which such evidence might have been developed.").

On *certiorari* review, the Supreme Court largely ignored the Seventh Circuit's copious derision of Mr. Bracy's judicial bias claim, only briefly summarizing the lower court's reasoning. *Bracy II*, 520 U.S. at 903. It also acknowledged as true the Seventh Circuit's dictum that Mr. Bracy's theory of compensatory judicial bias was "quite speculative." *Id.* at 905, *quoting Bracy I*, 81 F.3d at 689-90). The Supreme Court did point to the evidence noted by Judge Rovner in dissent that petitioner had noted in support of his theory, *id.* at n.5 (*citing* Rovner's dissent), but then in the very next sentence of *Bracy II*, the Court sidestepped even that point, describing instead the proper focus for review of a *habeas* petitioner's discovery request:

> In any event, difficulties of proof aside, there is no question that, *if it could be proved*, such compensatory, camouflaging bias on Maloney's part in petitioner's own case would violate the Due Process Clause of the Fourteenth Amendment.

*Id.* at 905.

Applying the governing law to the facts, the Court explained the proper application of Habeas Rule 6:

> In *Harris* [*v. Nelson*, 394 U.S. 286 (1969)], we stated that "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the

8

> necessary facilities and procedures for an adequate inquiry." 394 U.S., at
> 300. Habeas Corpus Rule 6 is meant to be "consistent" with *Harris. . . .*
> It may well be, as the Court of Appeals predicted, that petitioner will be
> unable to obtain evidence sufficient to . . . [prove his claim], but we hold
> that he has made a sufficient showing, as required by Habeas Corpus Rule
> 6(a), to establish "good cause" for discovery.

*Bracy II*, 520 U.S. at 908-09.

*Bracy II* thus sets out a clear, straightforward framework for considering a *habeas* petitioner's discovery requests. A court should first determine whether the petitioner has alleged the elements of the claim he wishes to prove, then determine whether he has made any "specific allegations" that support the particular discovery request. If the petitioner has properly alleged the claim and asked for probative evidence, he has shown "good cause" for discovery, and the court has a duty to permit it. If he has not, the court may deny the request.

What is unnecessary is extended speculation on the nature of the petitioner's claim, or on the possibility that the evidence the petitioner seeks may not prove his theory, or may prove the opposite of his theory. In this respect, the scope of discovery under Habeas Rule 6 is similar to the scope of discovery in conventional civil actions. A plaintiff who makes specific allegations which, if proven, would entitle him to legal relief is entitled, *without more*, to access to the fact-development procedures necessary to flesh out his claims without undue interference. *Cf., e.g., Neitzke v. Williams*, 490

U.S. 319 (1989) ("What [Fed.R.Civ.P.] 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations").

In short, a petitioner who has (1) made specific allegations warranting relief, (2) shown why the requested information is essential to the adequate factual development of his claims, and (3) demonstrated that the requested information is likely in the hands of the party or agency from whom discovery is sought and cannot be obtained through other means, has established "good cause" under *Bracy* and Rule 6. *See, e.g., Willis v. Newsome*, 771 F.2d 1445 (11th Cir. 1985)(in federal *habeas corpus* actions, where specific allegations before the court show reasons to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry); *Willis v. Zant*, 720 F.2d 1212 (11th Cir. 1983) (petitioner's claim that young adults were under-represented in the jury pool remanded to the district court for an evidentiary hearing, and, if necessary, discovery); *Horton v. Zant*, 687 F. Supp. 594 (M.D. GA.1988) (discovery ordered "to permit petitioner's counsel to ascertain the facts" to support his *Swain v. Alabama* claim); *see also Murphy v. Johnson*, 205 F.3d 809, 813-814 (5th Cir. 2000) ("where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he [is] entitled to relief, it is the duty of the

10

courts to provide the necessary facilities and procedures for an adequate inquiry"); *East v. Scott*, 55 F.3d 996 (5th Cir. 1995) (although a "district court generally has discretion to grant or deny discovery requests under Rule 6, a court's blanket denial of discovery is an abuse of discretion if discovery is indispensable to a fair, rounded, development of the material facts").

So long as the information before the court "support[s] the inferences" of constitutional deprivation alleged by the petitioner, "good cause" exists and discovery is mandated if "[t]he information requested by the petitioner would tend to prove or disprove the validity of such inferences and is relevant to petitioner's claim." *Rice v. Black*, 112 F.R.D. 620, 626 (D. Neb. 1986). *See e.g., Rice v. Clarke*, 923 F.2d 117, 118-19 (8th Cir. 1991)(discovery of relevant FBI records required); *East v. Scott*, 55 F.3d at 1001 (where petitioner alleged *Brady* violation, entitled to discovery to prove allegations) *granting relief after discovery, East v. Johnson*, 1997 WL 570214 (5th Cir. 1997); *Teague v. Scott*, 60 F.3d 1167 (5th Cir. 1995); *Toney v. Gammon*, 79 F.3d 693 (8th Cir. 1996) (petitioner entitled to discovery of physical evidence to establish constitutional claims).

It should also be noted that in a § 2255 case, like a civil case, discovery necessarily precedes resolution of claims on summary judgment. To be entitled to discovery, Mr. Purkey need not conclusively establish his entitlement to relief on the

merits of his claims. *Payne v. Bell*, 89 F.Supp.2d 967, 971 (W.D. Tenn. 2000)(good cause to grant discovery is not as high as the standard for granting relief or even as that for granting an evidentiary hearing).

**C. *McClesky v. Zant***

In *McCleskey v. Zant*, 499 U.S. 467, 489 (1991), the United States Supreme Court held that a *habeas* petitioner "abuses the writ" of *habeas corpus* "by raising a claim in a subsequent petition that he could have raised in the first, regardless of whether the failure to raise it stemmed from a deliberate choice." The petitioner who "abuses the writ" is not entitled to review of his claim, unless he can either show "cause and prejudice" for his actions, or demonstrate that failure to decide his claim will constitute a "fundamental miscarriage of justice." *Id.* at 498. In deciding whether a *habeas* petitioner has abused the writ, "the question is whether petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim in the first petition and pursue the matter through the *habeas* process, *see* 28 U.S.C. § 2254 Rule 6 (Discovery); Rule 7 (Expansion of Record); Rule 8 (Evidentiary Hearing)." *Id.* at 497. A federal *habeas* petitioner must include in his initial petition "what petitioner knows or could discover upon reasonable investigation. . . ." *Id.* Otherwise, he will later be foreclosed from having new claims considered on the merits in subsequent *habeas* actions.

Mr. Purkey now seeks to make a "reasonable investigation" into all claims or potential claims for which he has a good faith basis to believe exist in his case, and to "pursue the matter through the habeas process" of discovery under Rule 6, the procedure expressly articulated by the Supreme Court in *McCleskey*. Having placed an affirmative duty upon those seeking *habeas* relief to raise all claims in their initial petition, *McCleskey* places a concomitant duty upon the federal courts to provide petitioners with the necessary tools to meet this obligation, including discovery and services necessary for counsel to effectively utilize these discovery devices. Because this is Mr. Purkey's first § 2255 motion and he sets forth below a sufficient basis for alleging possible deprivations of his constitutional rights, *McCleskey* entitles him to discover evidence and information which could prove that he is entitled to relief.

**D.  *The AEDPA***

The severe and potentially fatal consequences of any perceived failure on the part of a *habeas* petitioner to raise, as soon as practicable, all constitutional claims in a federal *habeas corpus* petition have been codified and expanded upon by Congress with the passage of the Anti-Terrorism and Effective Death Penalty Act ["AEDPA"] of 1996. Under the AEDPA, claims not raised in an initial petition must be certified by the Circuit Court as either based upon newly discovered evidence establishing innocence or based upon a new rule of constitutional law that was previously

13

unavailable. *See* 28 U.S.C. § 2255. In short, the AEDPA expands upon the limitations set forth in *McCleskey* concerning the litigation of new claims in second or successive *habeas corpus* petitions, thereby underscoring the necessity of raising all possible claims in the first petition. With that necessity, therefore, comes a corollary duty on the part of the federal judiciary to provide habeas petitioners the means for discovering, developing and presenting all such claims and their factual bases through the recognized and available tools of claim/fact development, including discovery.

**F. Discovery Is Especially Warranted in a Capital Case**

The policies favoring discovery are even stronger in capital cases than in noncapital cases because the "finality" of death and its "qualitative[] differen[ce] from a sentence of imprisonment, however long," magnifies the "need for reliability" and, accordingly, the need for reliable fact-determination procedures. *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976); *McFarland, v. Scott,* 512 U.S. 849, 855 (1994). Because this is a death penalty case, broad discovery is necessary to ensure that extra measure of process which is demanded in capital cases. "[I]f death is involved, the petitioner should be presented every opportunity possible . . . to present facts relevant to his constitutional claims." *Wilson v. Butler*, 825 F.2d 879, 883 (5th Cir. 1987). In fact, the capital petitioner who fails to request full discovery in his initial *habeas* petition may lose his life because he failed to investigate his case earlier. *Tucker v.*

*Kemp*, 819 F.2d 978, 981 (11th Cir. 1987)(on eve of execution, court found abuse of the writ and denied relief where capital petitioner failed to seek discovery during first habeas proceeding). Given the gravity of this capital case, Mr. Purkey requests this Court's leave to conduct discovery which will enable him to fully investigate, develop, and present any and all relevant constitutional claims for relief in his capital § 2255 motion.

## II. <u>DISCOVERY REQUESTS</u>

Mr. Purkey requests the process of this Court to order the production of the following evidence and information in support of his 28 U.S.C. § 2255 claims:

### A. Federal Bureau of Investigation Files

Mr. Purkey moves this Court to order the Government to produce any and all records, notes, 302s, including initial drafts of 302s, and other documents possessed by the Federal Bureau of Investigation ("FBI") pertaining to the investigation and prosecution of Mr. Purkey.[4] Upon information and belief, Mr. Purkey is claiming that

---

[4] Knowledge of the existence of these documents and their contents, whether in the possession of the Department of Justice ("DOJ"), is imputed to the Government. *See United States v. Antone,* 603 F.2d 566, 569-70 (5th Cir. 1979) (for *Brady* analysis, no distinction is drawn between different agencies under the same Government — all are part of the "prosecution team"); *State v. Scott,* 943 S.W.2d 730, 738 (Mo. Ct. App. 1997) ("Fleeting reference was made by the prosecutor that the admissions were made to an Illinois law enforcement agency over whom he had no control ... Such a contention is hollow...The prosecution is not excused from informing the defendant that it intends to use evidence on the grounds that the evidence is not in its possession.").

the Government engaged in misconduct in numerous ways in his case, including, but not limited to: promising Mr. Purkey leniency in exchange for his making a statement admitting to the murder of Ms. Long, while denying the existence of such promise to the defense and to the jury.

**B.      Access to US Attorney Kurt Shernuk's file**

Mr. Purkey moves this Court to order the Government to produce any and all records, notes and other documents possessed by U.S. Attorney Kurt Shernuck pertaining to the interrogation and prosecution of Mr. Purkey.[5] Upon information and belief, Mr. Purkey is claiming that the Government engaged in misconduct in numerous ways in his case, including, but not limited to: promising Mr. Purkey leniency in exchange for his making a statement admitting to the murder of Ms. Long, while denying the existence of such promise to the defense and to the jury.

**C.      Access to *All* Bureau of Prison Files and Records Concerning Wesley Purkey and Michael Speakman**

Mr. Purkey seeks discovery of all documents, files, materials and other

---

[5] Knowledge of the existence of these documents and their contents, whether in the possession of the Department of Justice ("DOJ"), is imputed to the Government. *See United States v. Antone,* 603 F.2d 566, 569-70 (5th Cir. 1979) (for *Brady* analysis, no distinction is drawn between different agencies under the same Government — all are part of the "prosecution team"); *State v. Scott,* 943 S.W.2d 730, 738 (Mo. Ct. App. 1997) ("Fleeting reference was made by the prosecutor that the admissions were made to an Illinois law enforcement agency over whom he had no control … Such a contention is hollow...The prosecution is not excused from informing the defendant that it intends to use evidence on

information in the possession or control of the Bureau of Prisons concerning himself and Michael Speakman – classification and medical/psychological. In March and April 2007, Mr. Purkey, through undersigned counsel and pursuant to the Freedom of Information Act, sought copies of all such Bureau of Prison records and files on Mr. Purkey – classification and medical/psychological. The Bureau responded by releasing some records and withholding others.

Mr. Purkey requests that this Court order the Bureau of Prisons to release to undersigned counsel *all* documents and materials in its possession and/or control concerning both himself and Mr. Speakman, who testified against Mr. Purkey.

---

the grounds that the evidence is not in its possession.").

**CONCLUSION**

Given the gravity of this capital case, Wesley I. Purkey requests leave to conduct the requested discovery, including production of records and evidence, which will enable him to fully investigate, develop, and present any and all relevant constitutional claims including, but not limited to, prosecutorial misconduct and ineffective assistance of counsel. There is "good cause" for this discovery. By making this request at this time, Mr. Purkey does not waive his right to seek additional discovery in the future, in the form of further requests for access to relevant documents and records, as well as depositions of relevant witnesses that come to light through the disclosure of such relevant documents and records.

This Court should also allow Mr. Purkey to issue subpoenas to the relevant authorities for the production of the requested evidence. If the Government alleges that any of the information Mr. Purkey seeks *via* discovery is privileged and/or constitutes attorney work product, he requests the Court to require the Government to produce such information for *in camera* inspection and review by the Court. If the Government submits any such material, and the Court nevertheless refuses to allow Mr. Purkey and/or his counsel access to such material, Mr. Purkey then further requests the Court to copy the undisclosed material and maintain it in the record under seal for purposes of any potential subsequent appeal in this proceeding.

18

For all the reasons set forth above, Mr. Purkey respectfully requests that this Court grant Mr. Purkey the requested discovery and other relief set forth in this motion.

Respectfully submitted,

Teresa L. Norris, Esq.
P.O. Box 11744
Columbia, SC 29211
(803) 765-1044  (Phone)
(803) 765-1143  (Fax)
teresa@blumelaw.com
Co-counsel to Movant

Gary E. Brotherton, Esq.
2101 Chapel Plaza Court, Suite 13
Columbia, Missouri  65203
(573) 875-1571  Phone
(573) 875-1572  Fax
GEBrotherton@LegalWritesLLC.com
Co-counsel to Movant

By:  /s/  Gary E. Brotherton
GARY E. BROTHERTON
Co-counsel to Movant

Dated:   Columbia, SC
Columbia, MO
July 30, 2007

# CERTIFICATE OF SERVICE

This will certify that, on today's date, this motion was served upon the United States by filing via CM/ECF.

/s/ Gary E. Brotherton
Gary E. Brotherton

Dated:    Columbia, SC
Columbia, MO
July 30, 2007