# LOGAN & PETERSON, PC

FORENSIC, ADOLESCENT AND ADULT PSYCHIATRY

### WILLIAM S. LOGAN, MD
### STEPHEN E. PETERSON, MD

❏ 428 WEST 42ND STREET
KANSAS CITY, MISSOURI 64111
TELEPHONE: (816) 842-2500
FAX:          (816) 842-9980

231 S. BEMISTON
CLAYTON, MISSOURI 63105
TELEPHONE:  (314) 236-4914
FAX:          (314) 236-4990

June 29, 2007

3600 BURLINGAME, SUITE 1A
TOPEKA, KANSAS 66611

Teresa Norris, ESQ
Gary Brotherton, ESQ
Blume Weyble & Norris, LLC
1247 Sumter Street, Second Floor
Columbia, South Carolina 29201

O: 803 765-1044
F: 803 765-1143

**Re:    Wes Purkey; Treatment Recommendations**

Dear Ms. Norris and Mr. Brotherton:

As you know, you requested a psychiatric assessment of Wes Purkey to address his need for psychiatric medication treatment. Mr. Purkey was psychiatrically evaluated at USP Terre Haute, Indiana on June 8, 2007. The assessment consisted of 4.0 hours of psychiatric assessment plus the MMPI-2. Elements of the psychiatric assessment included review of records, discussion of his current functioning, and mental status examination.

I'm quite familiar with Mr. Purkey as I was one of the defense experts that evaluated him regarding the separately charged murders of Mary Ruth Bales (Kansas vs. Wesley Purkey; 98-CR-2202) and Jennifer Long (USA vs. Wesley Ira Purkey; 01-00308-01-CR-W-2). In addition, I had been asked by Mr. Purkey's former attorney, Fred Duchardt, to provide treatment recommendations due to difficulties with his conditions of confinement at CCA and at USP Leavenworth.

While I will not go through the details of the prior recommendations, eventually Mr. Purkey was treated at CCA with 3.0 mg Klonopin daily (1.5 mg twice per day), 100 mg Zoloft daily, and 200 mg Tegretol three times per day. He stabilized on this combination of medicines. After transfer to USP Leavenworth in about June 2003, Mr. Purkey's Klonopin was precipitously discontinued. This resulted in a critical deterioration of his mental functioning, marked agitation, anxiety-induced exhaustion, diminished concentration, and angry outbursts. That altered mental state made preparing his defense considerably problematic.

Case 4:06-cv-08001-FJG    Document 44-2    Filed 10/01/07    Page 1 of 9

Part of the reason for the present consultation with Logan & Peterson PC is that at least since February 27, 2007 Mr. Purkey had been demonstrating similar problematic behaviors at USP Terre Haute. Those were interfering with his rational ability to assist you in preparing for the post-conviction review. Then, Mr. Purkey was on no medications and was emotionally "raw." Since the initiation of the consultation, Mr. Purkey's working alliance has improved somewhat but he still demonstrates significant difficulties with emotional control.

Thus, because of Mr. Purkey's continued problematic behaviors, he was psychiatrically evaluated. You may recall this writer prepared a diagnostic report in August 2003 after interviewing Mr. Purkey on four occasions from September 2002 through December 2002. On the basis of the detailed assessment with independent psychological testing, Mr. Purkey's psychiatric functioning at the time of the two murders and in 2003 was as follows:

**Axis I** Cocaine Abuse with Hypersexuality (January 1998); Alcohol Abuse (January 1998); Dysthymia-Early Onset; Polysubstance Dependence, severe (psychostimulants, alcohol, and hallucinogens); Partner Relational Problem (extreme marital distress)

**Axis II** Personality Disorder NOS (with borderline, antisocial, obsessive-compulsive, and paranoid features).

**Axis III** Documented history of closed-head injuries (March 1968-five days of lost consciousness, August 1972-acute cerebral contusion with unconsciousness for one to two minutes, 1974, and 1977-DOC closed head injury with loss of consciousness for 1 1/2 days; mild frontal and temporal neuropsychological brain dysfunction as assessed by Dr. Leeson in January 2003; amphetamine-induced seizure in 1988; 32-year history of intravenous drug use; drug-induced psychosis in May 1998 history of drug-induced anxiety attacks in September 1998; unconfirmed reports of poisoning by his ex-wife.

As discussed in that report, he was considerably vulnerable because of the fragmented personality, toxic exposures of illicit drug use, and traumatic brain injuries for brain-injury induced impulse control problems. Then, as now, there remains an organic basis for his loss of emotional control, rage or rage-like anxiety responses, and self-defeating behaviors. These indicate severe chronic mental disease. In the past the Zoloft, Tegretol, and Klonopin respectively helped treat his depressive dysphoria, short emotional fuse, and panic or generalized anxiety.

Prior to June 8, 2007, your office forwarded an October 12, 2004 45-Minute Telepsychiatry Consultation Report by Robert Sarrazin M.D., from US MCFP Springfield, Missouri. Dr. Sarrazin diagnosed only polysubstance dependence in a controlled setting and antisocial personality disorder. Dr. Sarrazin found no basis for treating Mr. Purkey with Klonopin but thought it would be sometimes helpful for patients with antisocial personality impulsivity to receive Tegretol or an SSRI antidepressant like Prozac.

In an October 26, 2004 affidavit, Thomas Webster, M.D. Clinical Director at USP Terre Haute indicated that clonazepam (Klonopin) was a non-renewable medication without an approved non-formulary request from the Central Office. He indicated that Klonopin was extremely addictive and should not be administered for any extensive period of time. Klonopin could be used for control of severe agitation in a psychiatric patient, sleeplessness, part of a prolonged taper schedule, detoxification for substance abuse, and failure of standard modalities for seizure disorder. Dr. Webster indicated Mr. Purkey's functioning did not meet any of the mandated requirements, notably that there were no exacerbations of psychiatric illness in his chart. Also, Mr. Purkey had been prescribed Tegretol for a seizure disorder but refused to comply with standard therapy. Dr. Webster indicated that Mr. Purkey was being treated with Prozac and Tegretol which were appropriate for symptoms displayed by Mr. Purkey. Dr. Webster closed that Klonopin was not medically appropriate or necessary for Wesley Purkey.

Your office forwarded a number of forensic assessments and psychiatric treatment records about Mr. Purkey. These included records from CCA, US MCFP-Springfield, FMC Rochester, and USP Terre Haute.

The most recent USP Terre Haute treatment records during April 20, 2007 address thoracic muscle pain and a new prescription for glasses. The most the recent psychiatric notation was an April 4, 2007 progress note indicating the same psychiatric diagnoses and a GAF of 65-85 as in December 27, 2006. Those diagnoses were Bipolar Disorder (May 14, 2005), Personality Disorder (June 9, 2003), Depression (June 4, 2003), Psoriasis (July 7, 2003), and Antisocial Personality Disorder, severe. There was no "last psychiatric consultation" date but he had a history of anxiety and bipolar/mood disorder for which he was being treated with Tegretol.

On December 7, 2006, Mr. Purkey was seen for chest pains, pounding head, dry mouth, and nausea without vomiting. This followed a verbal confrontation with the unit team member related to noise from another inmate's door-kicking. He was assessed as having altered comfort due to "ineffective coping mechanisms."

In view of his EKG on December 4, 2006 noted as normal only for rapid heart rate and abnormal rhythm, it was unlikely he had a heart attack. His symptoms were much more consistent with a panic attack.

September 8, 2006 progress notes indicated Mr. Purkey was being treated with 50 mg Tegretol twice per day.

July 20, 2006 therapeutic drug level for carbamazepine indicated it was 1, which was below the therapeutic range of 2-10 mcg/ml.

May 12, 2006 Active Problem List noted Personality Disorder, Depression, Psoriasis, history for Anxiety and Bipolar/Mood Disorder, history of Antisocial Personality Disorder.

May 12, 2006 progress notes indicated Mr. Purkey was being treated with 50 mg Tegretol in the morning and 50 mg in the evening. He was treated with generic Prozac at 20 mg per day. There were no medications for anxiety. Dosages were similar in April 2006 and March 2006.

In March 2006, his carbamazepine level was 3, well within the therapeutic range.

In January 2006 his carbamazepine (Tegretol) was 200 mg per day. Fluoxetine remained 20 mg per day.

Taken together, the USP Terre Haute medical records indicate that Mr. Purkey has a well-established mental health history but has been receiving inadequate medications for depression, anxiety with panic, and mood swings. These records also indicate there has been no psychiatric reevaluation or attention to chronic mental illness. Minimal medications were prescribed through March 2006 but Tegretol was decreased. This resulted in his Tegretol level falling below the accepted effective therapeutic range.

Note that his GAF, a rough measure of therapeutic progress, remained at the 65-85 range from December 2006 through April 2007. There was no quantification in the record of what this range meant, especially since this is a highly unusual wide range and encompasses three levels of functionality. "85" is in the "absent or minimal symptom range with good functioning in all areas, interested and motivated in a ride range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns" to "65" which includes "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, as some meaningful interpersonal relationships." No clinical rationale was provided for these designations.

During the present assessment, Mr. Purkey demonstrated functioning significantly lower than that noted by any of the USP Terre Haute psychiatric notations.

First, Mr. Purkey produced an **MMPI-2** which should be interpreted with caution due to the possibility of an exaggerated response style but he could be experiencing stress or need to seek a great deal of attention for his problems. If he was not malingering, he may be exhibiting a high degree of distress and personality deterioration.

Symptomatically, the MMPI-2 suggested a severe psychological disorder with personality decompensation, disorganization, and thought disorder likely to persist. This was a very rare profile (86/68), occurring in less than 1% of the normative sample.

Interpersonally, Mr. Purkey was likely to have disturbed interpersonal relationships, to feel socially inadequate, and to have very poor social skills. He may appear blatantly negative in social interactions. He appeared emotionally alienated.

June 29, 2007
Wesley I. Purkey
Re: Treatment Recommendations
Page 5 of 9

Diagnostically, paranoid disorder and history of substance abuse was possible. Persons with this profile may be experiencing a great deal of personality deterioration.

Notably, the 68/86 code type indicates intense feelings of inferiority and insecurity. They are seriously deficient social skills and others may view them as moody, irritable, unfriendly, and negativistic. Their lifestyles can be characterized as schizoid. Preoccupation with theoretical matters to the exclusion of specific concrete aspects of their situations, blunted affect, rapid speech, and incoherent speech are common. Effective defenses are often lacking which result in withdrawal to fantasy. This is from John R. Graham, MMPI-2: Assessing Personality and Psychopathology, third edition (page 103).

Face-to face 4.0 hour **psychiatric interview** noted that Mr. Purkey had difficulty with sleep and readily reported his conditions of confinement were well-beyond normal circumstances. These included the consequences of the pre-fab building, hollow walls, stainless steel, and inmates that banged on the doors. Mr. Purkey reported feeling agitated to the point he threw his TV against the wall some three months earlier.

Tegretol had been discontinued as "ineffective" although he'd never been on more than "100 mg per day" (50 mg twice per day). There were blood draws for therapeutic level but he was never told the results.

He felt quite positive about his new glasses. He was the only person on death row with prescription lenses.

He reported no major health problems. He still tried to cope by filing grievances noting that they are "better than physical violence." He reported a positive alliance with his present legal team.

He still complained of frequent headaches for which he was treated with "one half" aspirin tablet per day. The frequency of headaches had increased since he was off Tegretol and Prozac.

Mr. Purkey spoke with significant dysprosody. He had prominent word-finding problems. This was much different than his stuttering.

Mr. Purkey did not have a reasonable therapeutic alliance with Dr. Webster who apparently just came to his door in what Mr. Purkey thought was "for show." There was no personal talk and so Mr. Purkey often cussed Dr. Webster out.

Mr. Purkey has had considerable experiences of anger. It is "rootless reasonless anger" and often surprises him. He finds it almost impossible to deal with this anger. He has been in verbal fights but no physical fights. The verbal fights occur fairly frequently.

June 29, 2007
Wesley I. Purkey
Re: Treatment Recommendations
Page 6 of 9

In retrospect, Tegretol had helped and Klonopin had "really helped" especially during trial. He had not been treated with valproic acid or lithium. He had not been treated with Lamotrigine or Topamax.

BuSpar had not helped at all. Trazodone made him feel like a zombie. Vistaril, an antihistamine agent used for sedation, had helped him sleep.

He had not been treated with Abilify, Seroquel, Zyprexa, or Risperdal.

Mental Status Examination indicated Mr. Purkey was in a good mood. He was neatly dressed, sported a beard, sported neatly trimmed hair, and wore his glasses. He was oriented to month and year but not day, being two days off. He was well aware of recent news items. He often read the New York Times and the Los Angeles Times as he liked national news. He had access to NOVA and The Discovery Channel.

Being able talk about his feelings helped reduce his agitation, feelings of conflict, anxiety, and distress. That his attorneys were helping him attempt to obtain medication helped him tolerate his feelings of agitation due to no medication.

He reported normal appetite with stable weight. He has had brief periods of food restriction when agitated. He expressly disagrees with Dr. Webster that he was not agitated.

Mr. Purkey reported very poor sleep, with a common duration of three hours and on due to another inmate's "pounding." He has many bad dreams or nightmares. Often these are related to the murders. There are themes of retribution, religious dogma, replaying of scenes from Jennifer Long's death, his attempt to make everything "go backwards," and feelings of remorse. There also dreams about scenes from Ms. Bale's house. His dreams occur a few days per week. He tries to meditate or write about things to lessen the impact.

His sex drive is less than normal. He is not preoccupied with sex and does not read pornography.

Mr. Purkey reported that his only future was related to how his daughter viewed him. Only her success gives him hope.

Frequently he has felt life was not worth living with the last time being two hours before the assessment. He easily can go into the "deep pit of depression" so that he has to distract himself by diving deeply into his legal matter. He has not cut or burned himself and has no new tattoos. He did not perceive any racial tension at USP Terre Haute. He can no longer identify with "game players."

Mr. Purkey feels suicidal quite frequently. He was last suicidal some three weeks before the assessment and there had been three or four episodes of strong suicidality. One took place when he wanted to fire his present attorneys. He was exhausted by no treatment, the "everyday" noise, and no prospect of medications.

Case 4:06-cv-08001-FJG    Document 44-2    Filed 10/01/07    Page 6 of 9

His attitude improved when he was told that this assessment would take place. Those that take an interest in his conditions of confinement help him stave off feeling suicidal. He had no plan for suicide and had not made any suicide attempts.

Mr. Purkey denied auditory, visual, gustatory, and olfactory hallucinations. He reported tactile hallucinations that were something like restless legs. He has some daydreams about Christ's sacrifice on the cross and peripheral shadows. These did not sound like visual hallucinations and were not compelling.

He reported a great deal of paranoia but does not act on it. He discharges his feelings by filing grievances. He does not believe the television or radio have special messages just for him. He does not believe there is more than one person or mind in his body. He denied any fugue. He suffers repetitive thoughts, has a hard time focusing, and frequently feels this is due to anxiety. He attempts to reduce this by exercising and calming himself through counting rituals. His ability to focus was much better when he was treated with Klonopin and Tegretol. Then, his "stress was workable."

His attention and concentration, as assessed by having him serially subtract seven from 100, was normal. His recognition memory, as assessed by having a recall three objects, was normal immediately, at one minute, and five minutes. His categorical reasoning was normal. His social judgment was reactive, sarcastic, and hypomanic. His abstract reasoning (interpretation of proverbs) was blocked and concrete. His digit span, a clinical test for anxiety and brain damage, was positive. That is he had difficulty repeating more than five digits forward or three digits reverse. Six forward and six reverse was normal. He appeared to put in good effort.

Mr. Purkey reported frequent panic attacks. During these he feels his chest heaving, that "his brain was clogged," pressure even though there was no reason for it, inability to sit down, racing heartbeat, and feeling like he was going crazy or having a heart attack. On two occasions he reported this to the infirmary. His EKG has been "fine." He can calm himself if he meditates. These panics have not taken place during a time that he felt manic or was somehow cycling between depression and hypomanic behavior.

**Impression:**
Wes Purkey is still experiencing significant anxiety with panic, depression, and personality disorder-mediated mood swings. He also has more frequent headaches, recurrent panic attacks, and greater feelings of agitation since the minimal dose of carbamazepine (Tegretol) was discontinued. Certainly, the December 2006 clinical observations of a panic attack, though it was evaluated as a cardiac event, strongly reinforced that he is not providing a malingered history.

As in 2003, with the exception of Cocaine Abuse with Hypersexuality and Alcohol Abuse, and Polysubstance Dependence, the Dysthymia-Early Onset, Partner Relational Problem, Personality Disorder NOS (with borderline, antisocial, obsessive-compulsive, and paranoid features), and documented history of closed-head injuries (March 1968-five days of lost consciousness, August 1972-acute cerebral contusion

with unconsciousness for one to two minutes, 1974, and 1977-DOC closed head injury with loss of consciousness for 1 1/2 days; mild frontal and temporal neuropsychological brain dysfunction as assessed by Dr. Leeson in January 2003; amphetamine-induced seizure in 1988; 32-year history of intravenous drug use; drug-induced psychosis in May 1998, history of drug-induced anxiety attacks in September 1998; and reports of poisoning by his ex-wife) still impact his day-to-day functioning.  These DSM-IV-TR diagnoses have not changed since 2003.

If anything, the current USP Terre Haute record from December 2006 to April 2007 indicates that Mr. Purkey is receiving inadequate attention to relevant psychiatric needs.  There are no entries about his psychiatric functioning because those questions are not being asked.

**Recommendations:**
Mr. Purkey has been temporarily buoyed by his legal-team's efforts to obtain medication treatment and has been calm while anticipating the evaluation process but still needs active psychiatric medication treatment of depression, anxiety, and mood swings.  Restarting of medications is justified to help manage his day-to-day anxiety, depression, and mood swings so that he can adequately and rationally participate in the appeal process.  Initiation of this treatment will not only reduce his agitation/depression/mood swings, but will assist his preparation for the appeal matter, and may greatly reduce his coping-impulse to file grievances.

Thus, it is strongly recommended that Wesley Purkey restart medications to treat depression, anxiety, and mood swings.  Respectively these would be an antidepressant, an anti-anxiety agent, and a mood-stabilizer.

In the past, he has managed well on the antidepressant Prozac at 20 mg per day.  Lexapro at 20 mg per day is approved for Major Depressive Disorder and Generalized Anxiety Disorder and may be a good alternative if he does not tolerate Prozac.  Similarly, Zoloft at 100 to 200mg per day may be helpful.  Desipramine (Pamelor) at 75 to 150 mg per day may help alleviate depression as well as reduce chronic back pain without providing excess sedation.  This medicine has a U-shaped therapeutic window and can be followed with blood drug levels.  There are other antidepressant choices as well.

In the past he has managed quite well on 3 mg of Klonopin per day.  Non-benzodiazepine medications such as BuSpar have not been helpful, most likely due to his past history of drug use.  While Klonopin can be addictive, it is a very acceptable drug for chronic anxiety or anxiety with panic or generalized anxiety due to its long duration of action.  Since he is in a controlled setting, it is extremely unlikely that he would be able to or even desire to divert Klonopin to anyone else.  He has long-term anxiety so regular dosing rather than PRN dosing is recommended.  Twice per day dosing of 1.5 or 2.0 mg of Klonopin would give him 24-hour coverage for anxiety.  At 3.0 or 4.0 mg per day he should be covered for any iatrogenic tolerance.  A lower level of anxiety and may also help him sleep better which will improve his mood and irritability.

In the alternative, Vistaril (hydroxyzine), an anti-histamine anxiolytic, can be given at up to 50 to 100 mg four times per day. As with Klonopin, the dosage would need to be carefully titrated. In particular with Vistaril, the dosage should be monitored so that the amount provides anxiety relief without excess drowsiness or dry mouth.

Tegretol (carbamazepine) should be restarted and would be the mainstay of managing his irritability, short fuse, anger/rage outbursts, cyclical dysphoria, and mood swings. As recently as March 2006, he had a low therapeutic level of Tegretol while receiving only 200 mg per day. He reported feeling more in control then. Therapeutic serum levels are usually 4 to 12 mcg/ml. His therapeutic serum level on 200 mg per day was below the usual individualized doses of 200 mg bid or TID as guided by serum blood level. Obviously, he should be closely monitored for adverse hematologic reactions, liver failure, and toxicity. If his mood swings do not stabilize then Topamax may be considered as a possible alternative. Lamotrigine, with its cautions about Stevens-Johnson Syndrome, would be much lower on the therapeutic ladder.

Finally, instituting these therapeutic interventions will improve Mr. Purkey's brain-injured, affectively-disordered, anxious, and personality-disordered ability to rationally prepare matters for the appeal.

If anything additional has come up since the assessment in June, do not hesitate to contact me. If any aspect of this brief letter needs clarification, do not hesitate to contact me. Thank you for consulting Logan and Peterson PC.

Sincerely,

Stephen E. Peterson, MD
Diplomate, American Board of Psychiatry and Neurology 1992
ABPN Subspecialty in Forensic Psychiatry 1994, Recertified March 2003