FD-302 (Rev. 10-6-95)

- 1 -

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription  11/28/2001

Michael Speakman was contacted at the office of the United States Marshal's Service, Western District of Missouri. After being advised of the identities of the interviewing agents, he provided the following information:

Wesley Purkey was placed in cell number A104 with Speakman on a Tuesday, after being brought to Corrections Corporation of America (CCA). The following Sunday, Speakman received an edition of the Kansas City Star and noticed the front page contained an article which involved Wesley Purkey and the case pending against him. Speakman told Purkey about the article, and, in response he grabbed the newspaper, quickly read the article and shredded it. He then flushed it down the toilet and contacted the guards, asking them not to distribute the newspapers to the other inmates. The following day, Purkey was placed in a cell by himself, next door to Speakman.

Immediately after flushing the newspaper, Purkey initiated a conversation with him, indicating that, as a cell mate, he felt he owed him an explanation regarding the article and the murder of the girl. Purkey explained his case was different than the ongoing Keith Nelson and Pamela Butler incident, in that Purkey did not "snatch" the girl from the street as Nelson did. Purkey described the initial contact with the girl as more like they were "partying," and that is was not at all forcible.

Speakman inquired as to why the case was being prosecuted in Missouri, if the murder occurred in Kansas. Purkey explained that the girl came from Missouri; however, he killed her in Leavenworth, Kansas.

Speakman also told Purkey he did not believe bones would burn until they reached a certain, very high temperature. Purkey disagreed and said that bones will burn just like firewood. Speakman asked if the skull burned also, however Purkey did not respond.

Purkey disagreed with some aspects of the article, one of which was that he threw the victim's ashes into a river. He maintained that was a lie or fabrication made up by law

Investigation on   11/02/2001   at Kansas City, Missouri

File # 7A-KC-80744 - 302-71)                    Date dictated  11/02/2001

SA John A. Brunell (JAB/dk)
by SA Dirk D. Tarpley

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; It and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

7A-KC-80744

Continuation of FD-302 of __Michael Speakman__ , On 11/02/2001 , Page __2__

enforcement officials. He also told Speakman the FBI had tried to lure his wife to a hotel room to have an affair.

Purkey further explained to Speakman that the murder of the girl and the murder of an 80 year old woman, who Speakman thought was named "Bells," occurred because he was strung out on drugs, including methamphetamine, cocaine, and ritalin, which he was "shooting." According to Speakman, Purkey said he, "beat the old lady over the head with a hammer for a crack rock." He told Speakman that on three or four occasions, he told his parole officer that he wanted to get into some sort of drug treatment program. According to Purkey, neither his parole officer or the Kansas Parole Board afforded him the opportunity for treatment.

He told Speakman that after the "Bells" murder, something awakened in him, which made him realize what he was doing. He then turned himself in to the authorities for committing that homicide. He felt the fact that he turned himself in to the authorities, would never be reported in the newspaper.

Purkey confided in Speakman that he planned to get evaluated in Springfield as to his mental health and was going to try to convince them he was in a black out when the murder occurred. Speakman told Purkey if he was found to be bi-polar, there may be a possibility for him to not receive a sentencing enhancement. He also told him that the tests they currently utilize are very thorough, and even if he attempted to manipulate the results, the tests would most likely, provide an accurate diagnosis.

According to Purkey, all law enforcement leads in this matter are based on what he told an inmate at the Hutchinson facility. Purkey told Speakman this inmate was snatched in the middle of the night and has not been seen or heard from since. Additionally, he contended law enforcement lied about him asking to be moved to a federal penitentiary in exchange for providing information regarding the murder.

In the days following the above conversation, Purkey was overheard talking to some of his family. According to Speakman, Purkey is very apologetic to his family, and has told his daughter that he is sorry she has to live in the same town

Case 4:06-cv-08001-FJG    Document 47-2    Filed 10/16/07    Page 2 of 3

FD-302a (Rev. 10-6-95)

7A-KC-80744

Continuation of FD-302 of ___Michael Speakman_____ , On __11/02/2001__ . Page ___3___

where this occurred.  He was also heard to tell her it is okay with him if she wishes to change her last name.

According to Speakman, Purkey possesses a hatred of women.  He described him as having some sort of "severe complex", and is extremely negative acting toward females.  Speakman described Purkey as appearing to be intelligent with "book smarts;" however, he also seems to be two different people.  He explained Purkey changes the topics of discussions and directions very rapidly.  Furthermore, he reported Purkey becomes immediately irate when he is called a "psychopath."  Purkey seemingly fears that others will feel that he is some sort of baby raper or has committed a crime comparable to that of Keith Nelson.  Purkey has also confided he would "snatch" a plea for a life sentence "in a minute", because he "knows they will kill me."  In making this statement, Purkey was referring the judicial system.