# FREDERICK A. DUCHARDT, JR./ATTORNEY AT LAW
## P.O. BOX 349, 110 E. 6TH STREET/KEARNEY MISSOURI 64060
## TELEPHONE 816-628-9095 FAX 816-628-9046

January 29, 2002

The Honorable Fernando Gaitan
The Honorable Sarah Hays
Charles Evans Whittaker Federal Courthouse
400 E. 9th St.
Kansas City MO 64106

Dear Judge Gaitan and Judge Hays

Per request by Judge Hays, I have prepared a preliminary budget for providing Wesley Purkey's defense in the case of **United States v. Purkey**, 01-00308-01-CR-W-2. I submit this budget with a set of provisos.

First, I submit this budget on behalf of both appointed counsel in this case, me and Laura O'Sullivan. Thus, this budget proposal is meant to cover all attorney and other costs which will be associated with providing the defense for Mr. Purkey.

Second, I rely in large measure upon my experience in providing defense services to other capital case clients, and the necessary costs which are attendant thereto. The estimates which I make here are consistent with the actual expenditures made by my defense team on behalf of Defendant Dennis B. Moore, Sr. in **United States v. Moore, et al**, 94-00194-01-CR-W-9, a capital case tried before Judge D. Brook Bartlett in 1996, and on behalf of Defendant German Sinisterra in **United States v. Sinisterra, et al**, 98-00311-CR-2-W-2,4.

Third, I ask that some understanding and leeway be given by this Court as concerns the firmness of this budget. I certainly have made the best, most educated estimates I can. And, I am confident in the numbers, particularly in light of my experience in the **Moore** and **Sinisterra** cases, noted above, and the success with estimates there. However, the **Moore** and **Sinisterra** case also taught that, try as one might, he/she cannot make perfect estimates, particularly upon each and every CJA billing category. In the **Moore** and **Sinisterra** cases, allowances were made for this, by permitting counsel to shift funds between line items in the budget. That way, an underestimation in one category could be made up by an overestimation in another category, without changing the overall budget. I would ask that similar leeway be permitted in this case.

Finally, I note that, in this budget, I have shared with the Court much in terms of strategy for the defense of Mr. Purkey. In billings which the defense team will make through the course of disposition of

1

Case 4:06-cv-08001-FJG    Document 47-6    Filed 10/16/07    Page 1 of 11

this case, we on Mr. Purkey's defense team will, of necessity, reveal much more in terms of confidential work product and trial strategy. In prior cases, Ann Busterud has taken steps to safeguard this sensitive information from dissemination to the public in general, and the government prosecutors in particular. I specifically ask that confidentiality concerning these budgetary submissions continue throughout the pendancy of this case. To me that means, until the case is finally resolved, keeping the budget and billing information strictly between the client's defense team, the Court, and Ann and the others in the billing process. I trust that the Court will find it appropriate to deal with the budgeting and billing information in the same confidential manner as this case proceeds to trial.

I now shall break down and detail, by CJA categories, the time and expense estimates for defense services for Mr. Purkey. To hopefully make this presentation more easily understandable, I shall present tables of time and cost estimates at the start, and then I shall present supporting factual discussion thereafter.

### *IN COURT TIME*

| *PROCEEDING* | *ONE ATTY TIME* | *TWO ATTY TIME* | *COST @ $125/HR* |
|---|---|---|---|
| *PRETRIAL* | 50 | 100 | 12500 |
| *JURY SELECTION* | 40 | 80 | 10000 |
| *TRIAL 1ST PHASE* | 80 | 160 | 20000 |
| *PENALTY PHASE* | 40 | 80 | 10000 |
| *SENTENCING* | 4 | 8 | 1000 |
| *TOTALS* | 214 | 428 | 53500 |

*Overview*-The government has provided considerable discovery about this case. From that discovery, we know that the government's theory at trial will be that Purkey kidnapped, raped and killed the victim, and then cut up the body with a chainsaw, and burned the parts in the fireplace at his home. In light of the nature of the crime, and particularly the destruction of the body, the government's case, that is proof of the crime, is made much more complex. The government's evidence against Purkey will start with a large group of statements from Purkey. The government will likely attempt to buttress the information from the statements with a wide array of testimonial, documentary, physical and scientific evidence.

*Pretrial Hearings*--The following is the wide array of pretrial issues requiring resolution about which we know right now. The time estimate made in this category is based upon the notion that these matters will have to be resolved.

2

Case 4:06-cv-08001-FJG    Document 47-6    Filed 10/16/07    Page 2 of 11

- <u>Discovery</u>--For the first time in my memory, I do not anticipate a protracted battle over discovery taking up much of the pretrial time between Court and Counsel. Unfortunately, this does not mean that the government has formally opened its file. Rather, it means that, despite a closed file policy, the government has given over what appears to be most of its discovery, and certainly discovery which permits significant defense pretrial preparation. However, the government apparently does have a limited amount of evidence (I speculate in the form of some sort of informant or informants) which it does not intend to release without order of the Court. Thus, some limited discovery motion practice will be required.
- <u>Statement and other Suppression</u>--Motion practice is already ongoing regarding suppression of Purkey's statements, as well as over "fruit of the poisonous tree" from those statements constituting most all of the rest of the government's evidence.
- <u>Conditions of Pretrial Detention</u>--On Mr. Purkey behalf, we are in the midst of litigating over a constellation of difficulties which Mr. Purkey is having with his conditions of detention at CCA. There is considerable reason to believe that these matters will be ongoing.
- ***Daubert*** <u>Issues</u>--From the discovery thus far, it seems there may be certain scientific evidence offered. There will be substantial questions about the admissibility of most of that evidence which will have to be resolved pretrial.
- <u>Other Crimes Evidence</u>--It is anticipated that the government may try to bolster its case using evidence from another murder committed by Purkey. Motions *in limine* regarding other crimes evidence will have to be resolved, particularly in light of the powerful prejudice of such evidence.
- <u>Purkey's Mental Competence</u>--The further we get into this case, the clearer things become that issues regarding Purkey's competence, now and at the time of the alleged offense, will have to be resolved.
- <u>Jury Selection</u>--I intend to ask that the Court follow the practice employed in all death cases which have been tried to date in this District, and utilize a juror questionnaire. A questionnaire saves time for all in the long run, by garnering a substantial amount of valuable information in an efficient way. In order to make a questionnaire work, the Court and the parties must invest time in going through the provided information. This and other work regarding jury selection can and should be resolved in pretrial hearings.
- <u>Death Penalty Issues</u>--Since the government indicates it intends to seek the death penalty, a host of additional substantive and procedural issues regarding the death penalty will be raised, and must be evaluated by the Court.

3

Case 4:06-cv-08001-FJG    Document 47-6    Filed 10/16/07    Page 3 of 11

*Individual and Group Voir Dire, and the Jury Selection Process*-Because the **Moore, Lightfoot, Sinisterra** and **Nelson** cases have been tried in this District, we have excellent measures of how much time will be required to conduct a jury selection process which conforms with Federal Statutory and Constitutional law dictates. Though I understand that the **Nelson** process was shorter, the other cases, particularly those in which I took part, generally took the better part of a week for conducting the group and individual voir dire processes, as well as the actual jury selection process. Based mostly upon those experiences, I estimate requiring 40 hours to conduct the jury selection process.

*Trial*-It is very difficult to know, at this point, how long trial will take. Depending upon how the Court rules upon evidence admissibility issues, particularly as concerns other crimes evidence, I would estimate that the government's case could take anywhere from a minimum of four days, to a maximum of ten days, to present. It is even more difficult to tell how long the defense will take. I have asked for funding for mental health and medical experts to conduct necessary testing of Mr. Purkey. Depending upon the results of those evaluations, there may be substantial evidence requiring several days to present. From all of this I am making a very rough estimate of ten days being required to try the first phase of this trial.

*Penalty Phase*--It is likely that, if the government or defense evidence is deemed inappropriate for the first phase of trial, it may well be admissible at the penalty phase. Should that happen, there will likely be a defense response to the govenrment's evidence and visa versa. These and other anticipated prosecution and defense penalty phase evidentiary sources make it likely that the government and defense will require two to three days each to put on the respective penalty phase cases. The estimated time is based upon these thoughts.

*Sentencing*-The time allotted here is for evidence and argument upon any posttrial motions and upon sentencing issues.

4

Case 4:06-cv-08001-FJG    Document 47-6    Filed 10/16/07    Page 4 of 11

## *OUT OF COURT TIME*

| *ACTIVITY* | *TOTAL ATTORNEY HOURS* | *COST @ $125/HR.* |
|---|---|---|
| *CLIENT CONFERENCES* | 220 | 27500 |
| *WITNESS INTERVIEWS* | 120 | 15000 |
| *INVESTIGATOR/EXPERT CONFERENCES* | 120 | 15000 |
| *REVIEW COURT RECORDS* | 250 | 31250 |
| *REVIEW EVIDENCE* | 500 | 62500 |
| *CONSULT RESOURCE CENTER* | 25 | 3125 |
| *LEGAL RESEARCH/WRITING* | 700 | 87500 |
| *TRAVEL* | 300 | 37500 |
| *OTHER* | 400 | 50000 |
| *TOTALS* | 2635 | 329375 |

**Client Conferences**--Mr. Purkey is easily one of the most challenging clients I have ever encountered. Many other lawyers have succumbed to the difficulties of dealing with Mr. Purkey. For example, in Mr. Purkey's recent case in Kansas City, Kansas, the Court found it necessary to change defense lawyers three different times before the case reached disposition. I understand similar problems have occurred in other cases involving Mr. Purkey. Part of the problem comes from Mr. Purkey's mental health problems. Over the years, Mr. Purkey has been diagnosed with an array of significant psychiatric problems, and he obviously suffers with those problems, to this date, in any of his interpersonal dealings. But Mr. Purkey's problems are not that simple. Mr. Purkey is also very familiar with the workings of the justice system. Not only has Mr. Purkey dealt with the criminal justice system, he has, while incarcerated in various jails and penitentiaries, brought a significant number of civil suits involving conditions of confinement. Because of this background, Mr. Purkey cannot and will not merely defer to advice of counsel. All of this means that more time than normal needs to be spent dealing with Mr. Purkey related to normal case proceedings. In addition, part of our agreement with the government regarding the early discovery they are giving involves our assurance that we shall not leave copies of the government-provided materials with Mr. Purkey, but share those materials with him only in our presence. We have needed to share much of this information directly with Mr. Purkey, not only to keep him abreast concerning the case, but also to gain his assistance in preparing the defense. In addition, as we anticipated, we have needed to spend a considerable amount of time with Mr. Purkey in order to properly ferret out

5

applicable mitigation issues for a possible penalty phase. We figure needing to continue these same efforts throughout, and the time estimate takes this into account.

**Witness Interviews**-Since the government seeks the death penalty in this case, we on the defense team must, in essence, prepare for prosecution witnesses, and prepare our own witnesses, for two trials. There is the first phase trial upon the issue of guilt, and then the penalty phase trial. And, if the government is successful in its efforts to rely upon other crimes evidence, there will be preparation for at least one additional case. From what we know about discovery, all of these "trials" will involve different groups of witnesses upon vastly different themes. To prepare, there will be a tremendous number of people who must be interviewed and prepared for their testimony. An effort toward attorney time saving will be made as soon as approval is made for our requested investigator. Nevertheless, the time allotted will be necessary for the attorneys to do what they need to do to prepare for the testimony of all of these various witnesses at trial.

**Conferences with Experts and Investigators**--This bodes to be an experts-intensive case. The time here is set aside for work to be done by the attorneys directly with the investigator, mental health experts, medical experts, DNA experts, the mitigation specialist and the sentencing specialist.

**Obtain and Review Court Records**--In this line, I have allotted time for review of the pleadings filed by the government, and of the Findings and Orders which each of you will render upon the various motions which will be filed in this case. Such thorough review will be necessary, of course, for proper preparation of any necessary responses to the pleadings, Findings and Orders. I have also set aside time for proper work to be done with any jury questionnaires which the Court may permit to be used. As noted already above, questionnaires have been used successfully in the other capital cases tried in this District, and I fully intend to ask that the court use one here. If questionnaires are used, that use will be successful only if the parties invest the pretrial time necessary to read, assimilate and collate the information contained in the questionnaires. We have tried to allot sufficient time to do all of these things effectively. Finally, I have allotted time for review of the records from the prior court proceedings over the years involving Mr. Purkey.

**Obtain and Review Documents and Evidence**--This category first accounts for the time necessary to review any discovery provided by the government. Next, there are literally thousands of pages of materials related to Mr. Purkey's incarceration, medical and mental health history which must be reviewed.

**Consultation with Resource Center**--Kevin McNally of Kentucky, David Bruck of South Carolina and Dick Burr of Houston, Texas are employed by the Washington D.C. Administrative Office of the Federal Courts in order to provide a nationwide clearinghouse for valuable information

6

for counsel appointed in Federal Death Penalty cases.  My experience has shown that, on occasion, upon certain limited matters, reference to these resource persons can be extremely time efficient.  I have set aside time for this case in a similar amount to that which I allotted in the aforementioned **Moore** and **Sinisterra** cases.

**Legal Research and Writing**--Extensive pleading and briefing has already been done on suppression and conditions of pretrial detention issues.  Also, there will be pleading and briefing related to the jury questionnaire, jury selection, jury instruction, penalty phase and a veritable host of other issues.  The amount of time now set forth is our best estimate of what we will need to properly research and brief these areas.

**Travel**--Our estimate here accounted for a group of factors.  First, since Mr. Purkey is incarcerated at CCA in Leavenworth pending trial, travel time has been, and will continue to be, necessary for visits with him.  Second, it may be necessary for Counsel to travel to Washington, D.C. to argue, before the Department of Justice, that the death penalty not be sought in this case.  Third, there has been, and will continue to be, significant travel around the Kansas City metropolitan area for investigation upon issues related to the government's case, as well as for necessary court appearances.  Finally, our investigation has uncovered a host of out-of-town matters and witnesses requiring attorney and investigator travel, particularly in the central Kansas and Wichita areas.

**Other**--We use this as a catch-all category to hold a variety of necessary, but otherwise undesignated activities.  Work connected with this budget-creation process is accounted for here.  Preparation for our presentation to the Department of Justice has been accounted for here.  Time necessary for out-of-the-Courtroom conferences with the Judges and other counsel involved in the case is set forth here.  Time for trial preparation tasks is also set forth, that being time for such tasks as creating of outlines for salient parts of the trial, drafting of presentations for parts of the trial like voir dire, opening statement, witness examination, closing argument, etc., assembling of evidence in a coherent fashion for presentation at trial, creation of demonstrative evidence exhibits, and so on.  I also include such trial tasks as overnight review of the day's evidence and incorporation of that information into the tasks for the next day and the rest of the trial.  I have drawn my estimates here heavily from past experience, particularly in the **Moore** and **Sinisterra** cases.

7

<u>ATTORNEY EXPENSES</u>

| EXPENSE CATEGORY | AMOUNT REQUESTED |
|---|---|
| MILEAGE | 6000 |
| PARKING | 150 |
| MEALS | 500 |
| LODGING | 1000 |
| COPYING | 3000 |
| POSTAGE | 500 |
| TOLL CALLS | 1000 |
| FAX | 200 |
| OTHER | 2000 |
| **TOTAL ATTORNEY EXPENSES** | 14350 |

**Mileage**--Under this category, I have accounted for all transportation expenses. I have accounted for expenditures for the trip to Washington. I have accounted for the expense of car travel to and from Leavenworth for the client conferences already made, and still to come. I have also accounted for travel to and from local and out-of-town investigative sites. And, I have accounted for travel to and from Court.

**Parking**-Accounted for here, mostly, are downtown Kansas City parking fees and parking fees associated with the out-of-town travel noted above.

**Meals**-Costs of meals are estimated at $25 per day for trips to Washington and to outstate Kansas.

**Lodging**-Hotel costs for Washington D.C., and the out-of-town investigative sites are included herein.

**Copying**--My estimate here, at 10 cents per page, is my best guess how much money it will take to do necessary duplication of discovery and Court filings. The cost estimate here also takes into account the need to pay the fees for other private and public agencies to retrieve and copy their files related to Mr. Purkey's background.

**Postage**--For the most part, postage will be used to provide necessary copies of pleadings to other counsel.

**Toll Calls**-The costs here will come largely from collect calls from Mr. Purkey. There will also be out-of-state investigative calls.

8

**Telegram/Fax**-Fax communication of pleadings and the like will be necessary to supplement mail correspondence. That is accounted for here.

**Other**-We anticipate under this category expenses for preparation of exhibits and other demonstrative evidence.

### *PROFESSIONAL EXPENSES*

| *PROFESSIONAL EXPENSE* | *ESTIMATED COST* |
|---|---|
| *INVESTIGATOR* | 35000 |
| *PSYCHIATRIST* | 15000 |
| *NEUROPSYCHOLOGIST* | 6500 |
| *NEUROLOGIST* | 3000 |
| *POISONS TESTING* | 620 |
| *DNA EXPERT* | 2500 |
| *JURY CONSULTANT* | 10000 |
| *MITIGATION SPECIALIST* | 45000 |
| *SENTENCING SPECIALIST* | 7500 |
| **TOTAL PROFESSIONAL EXPENSES** | 125120 |

**Investigator**-Under separate Motion, I have made specific request, and justification, for an investigator, Michael Armstrong. Therein, I have designated the specifics in terms of the tasks anticipated for Mr. Armstrong to complete. The amount requested for an investigator is consistent with amounts approved in other capital cases which have been tried in the District.

**Mental Health Specialist**-Via a motion to the Court, I have requested appointment of Dr. Stephen Peterson, M.D. as our mental health specialist. In the motion, and in a followup letter, I have noted Dr. Peterson's qualifications, and the areas in which Dr. Peterson will examine and consult. In the followup letter, I have also provided Dr. Peterson's own estimate, in a range, of costs for his services. The amount requested under this category is based upon my best estimate in light of my knowledge about the case, my experience with costs of this sort, and Dr. Peterson's cost estimates.

**Neuropsychologist and Neurologist**--In light of Mr. Purkey's history of mental health problems and head injuries, Dr. Peterson has recommended that the services of a neuropsychologist and neurologist be enlisted. It will be necessary for a neuropsychologist to conduct neuropsychological testing, and likely also for a neurologist to

9

Case 4:06-cv-08001-FJG    Document 47-6    Filed 10/16/07    Page 9 of 11

conduct neurological testing, to determine whether Mr. Purkey's problems have identifiable organic origins. Under separate cover, I have initially made the request for the neuropsychologist, Dr. Bruce Leeson, Ph.D. Depending upon the results obtained by Dr. Leeson, we may well also need to enlist the services of Dr. Bernard Abrams, M.D., though I shall not formally make that request until we know that is needed. The estimates are consistent with my experience in dealing with such experts in the past, as well as estimates of costs provided by these experts.

**Poisons testing**--Mr. Purkey has filed a request in this regard. Therein, he has noted that, since 1998, Mr. Purkey has persistently alleged that he has suffered heavy metal poisoning at the hands of family members. There are recognized to be profound psychiatric consequences resultant from that sort of poisoning. If such poisoning has occurred, it can be detected by analysis of certain samples from Mr. Purkey, including hair and blood samples. Such samples were taken from Mr. Purkey in 1998, and still exist, available for testing. And, of course, such samples can be drawn from Mr. Purkey now. The amount requested under this line is the cost for testing the samples from Mr. Purkey at the Great Plains Laboratory.

**Blood Expert Regarding DNA and Luminol Results**--This is a request for cost for reviewing results, consultation, and possible testimony regarding government DNA and luminol testing. For a variety of reasons, we believe the government's findings and conclusions are flawed, and we require the services of this expert to flesh this matter out. A separate request has been made for this expert, Jami Harman of Genetic Technologies, and the request is consistent with the costs estimate provided by Ms. Harman.

**Jury Consultant**-We wish to retain a jury consultant to assist with the jury selection process. In all candor with the Court, the costs for such a consultant were approved in the *Moore* and *Lightfoot* cases, but not in the *Sinisterra* case. We have received a proposal from a group in Lawrence, Kansas to served in this capacity for fees totaling approximately $10,000.00.

**Mitigation Specialist**--Use of mitigation specialists is a common practice in death penalty cases, and mitigation specialist services have been approved in all of the death penalty cases which have been tried to date in the Western District of Missouri. Many times, the use of a mitigation specialist is a more cost-effective way of preparing the penalty phase case for the defense. I have not yet chosen a mitigation specialist, but the amount requested in this line is in keeping with the amounts which have been approved for mitigation specialists in the other cases tried in the Western District to date. It is also consistent with estimates which I have received from mitigation specialists with whom I have consulted to date.

**Sentencing Specialist**-In the capital cases tried in this District to date, funds in an amount similar to that requested here have regularly

10

been approved for such specialists. The role of the sentencing specialist is to provide for the jury, during the penalty phase of the trial, necessary information related to sentencing not otherwise related by other witnesses. Such a specialist can be used, for example, to address claims by the government that the defendant poses a future danger. Again here, I have not yet identified the specific person whom I intend to employ. But, the requested amount is in keeping with what those in the field estimate would be the costs for such services, as well as with my experience in employing such specialists in other cases.

### *CONCLUSION*

I thank both of you for your interest in, and concern with, the defense of Mr. Purkey's case, as well as adequate funding for same. If you have any questions about any of these matters, please let me know, and I shall do my best to answer those questions.


Yours truly


Frederick A. (Fred) Duchardt, Jr.

cc: Ann Busterud

11