WESLEY IRA PURKEY,  )
        )
      Movant,  )
        )
      vs.  )    No. 06-8001-CV-W-FJG
        )
UNITED STATES OF AMERICA,  )
        )
      Respondent.  )

**DECLARATION OF STEVE ECKERT, Ph. D.**

I, Steve Eckert, do hereby declare as follows:

1.     I have been employed as the Chief Psychologist at the Federal Correctional Complex, Terre Haute, Indiana since November 2004. Prior to serving as the Chief Psychologist at FCC Terre Haute, I was also employed as the Drug Abuse Treatment Coordinator at the United States Penitentiary, Terre Haute, Indiana. I have been employed with the Bureau of Prisons since October 1995.

2.     This declaration is submitted in response to the Movant's MOTION TO COMPEL THE BUREAU OF PRISONS TO PROVIDE MR. PURKEY WITH NECESSARY AND ESSENTIAL PSYCHIATRIC TREATMENT. I have personal knowledge of the facts contained herein and have reviewed all entries concerning Mr. Purkey contained in the BOP Psychology Data System (PDS). The following is my summary of the PDS entries for Mr. Purkey.

*SE*

## OVERVIEW OF BOP PSYCHOLOGY DATA SYSTEMS (PDS)

3.      Mr. Purkey is very well known by BOP Psychology Services. In fact, since April 10, 2002, there have been 85 total entries in the PDS with USP Terre Haute Psychology staff making 69 of those entries.

4.      On April 11, 2002 - C. Pietz, Ph.D., A.B.P.P. (MCFP Springfield) conducted a Forensic Report (4241) to determine if Mr. Purkey was competent to proceed to trial. Forensic evaluations are typically comprehensive in nature and Dr. Pietz's evaluation is no exception. Her report was organized by the following headings:

- IDENTIFICATION AND REASON FOR REFERRAL

- SOURCES OF INFORMATION

- DEFENDANT'S PERSONAL HISTORY

- HOSPITAL COURSE

- MEDICAL ISSUES

- MENTAL STATUS AT THE PRESENT TIME

- PSYCHOLOGICAL TEST RESULTS

- CASE FORMULATION

- DIAGNOSES

- DISCUSSION AND OPINION CONCERNING COMPETENCY TO PROCEED

- PROGNOSIS

Dr. Pietz concluded there was no available information, either from historical records or from observation and interviews, to indicate Mr. Purkey suffered from a major mental illness. Dr. Pietz gave him the following diagnoses:

Axis I: Polysubstance Dependence

Axis II: Antisocial Personality Disorder

5.     On August 13, 2002 - C. Scronce, Ph.D., Director of Forensics (FMC Rochester) Dr. Scronce conducted a second comprehensive Forensic Evaluation (4241). Dr. Scronce's evaluation was organized by the following headings:

- IDENTIFICATION AND REASON FOR REFERRAL
- EVALUATION PROCEDURES
- BACKGROUND INFORMATION
- MEDICAL/SUBSTANCE USE/PSYCHIATRIC HISTORY
- MENTAL STATUS ON ADMISSION
- COURSE OF EVALUATION
- PSYCHOLOGICAL TESTING
- CASE FORMULATION
- DIAGNOSTIC IMPRESSION
- PROGNOSIS
- OPINION ON COMPETENCE TO STAND TRIAL

Dr. Scronce reported the following concerning Mr. Purkey's prior mental health history:

"...There are a number of previous mental health evaluations of the defendant, but most of

his prior contacts with mental health professionals appear related to his antisocial behavior and drug use...The most recent evaluation, [prior to Mr. Purkey's designation to the BOP] in May 2000, by the Kansas Corrections yielded diagnoses of Polysubstance Dependence and Antisocial Personality Disorder. The assessment, which included psychological testing, revealed no evidence of major mental illness..."(page 4)

Dr. Scronce's opined the following:

"...Prominent irritability and mood lability can be symptoms of a mood disorder such as Bipolar Disorder. In the defendant's case, however, it seems clear that his hostility and angry outbursts are associated with a maladaptive personality style..."(page 9)

"...During the current evaluation, Mr. Purkey displayed some of the angry outbursts cited by defense counsel as impairing his ability to participate in his defense. I too had difficulty engaging the defendant in interviews when he was angry about other issues, such as whether his wife's visit would be approved. However, it is important to recognize that the defendant's anger and irritability are part of a longstanding and maladaptive personality style, rather than a mental illness..."(page 12)

"...it is my professional opinion that Wesley Purkey does not presently suffer from a mental disease or defect rendering him unable to understand the nature and consequences of the proceedings against him, or to assist properly in his defense." (Page 12)

Dr. Scronce gave Mr. Purkey the following diagnoses:

Axis I: Polysubstance Dependence

Axis II: Antisocial Personality Disorder

SE

6. On November 5, 2003 - K. Donovan, Ph.D., (USP Leavenworth) gave Mr. Purkey the following diagnoses:

Axis I: Adjustment Disorder with Anxiety and Depressed Mood

Axis II: Antisocial Personality Disorder

7. On January 28, 2004 - K. Donovan, Ph.D., (USP Leavenworth) revealed that Mr. Purkey was taking Tegretol and Zoloft. Dr. Donovan wrote, "Currently taking medication for mood swings, explosive behaviors, anxiety, and depression..."

8. On. February 12, 2004 when Mr. Purkey arrived to USP Terre Haute, Dr. Breyer(Rupska) wrote that Mr. Purkey was refusing Tegretol/Zoloft and was demanding to be placed on Klonopin. She opined Mr. Purkey was functioning within normal limits.

9. From March 10, 2004, to August 25, 2004 - S. Eckert, Ph.D. (USP Terre Haute) made eight entries in the Psychology Data System (PDS). Mr. Purkey never made any complaints of a psychological nature and mental status exams always noted that he was functioning within normal limits.

10. On September 23, 2004 - S. Eckert, Ph.D. (USP Terre Haute) described Mr. Purkey as demanding and adversarial. Mr. Purkey asserted he had Bipolar Disorder and wanted his Tegretol dosage doubled. However, Dr. Eckert opined that Mr. Purkey presented as within normal limits with no signs consistent with Bipolar Disorder or any other psychiatric condition.

11. On October 21, 2004 - S. Eckert, Ph.D. (USP Terre Haute) stated that symptoms consistent with a major mental disorder or acute distress were NOT evident. Dr. Eckert specifically related that Mr. Purkey presented as "...markedly curt, pointed, abrasive, and

Declaration of Steve Eckert, Ph. D.
Page 6       *SE*

confrontational..."

12.     On November 18, 2004 - S. Eckert, Ph.D. (USP Terre Haute) stated that symptoms consistent with a major mental disorder or acute distress were NOT evident. Dr. Eckert specifically related that Mr. Purkey presented as his baseline: "...markedly caustic, confrontive, and hostile..."

13.     On December 17, 2004 - S. Eckert, Ph.D. (USP Terre Haute) stated that symptoms consistent with a major mental disorder or acute distress were NOT evident. Dr. Eckert specifically related that Mr. Purkey presented as his baseline: "...caustic, "pointed," and argumentative..."

14.     On January 13, 2005 - S. Eckert, Ph.D. (USP Terre Haute) documented the following: "...Inmate PURKEY spoke at length about how he feels that he needs additional Rx beyond the Tegretal which he is presently taking for seizures. He continues to claim he has Bipolar Disorder as well as a sxs[symptoms] of depression and anxiety. He says he wants to be placed on Zoloft...Since inmate PURKEY arrived to this institution sxs consistent with Bipolar Disorder, depression or anxiety have NOT been observed or noted by the psychology dept. At this point psychotropic Rx does not appear to be needed or appropriate at this time even though the inmate is demanding he receive it. Inmate will continue to be monitored closely by psych svs and appropriate pharmacological interventions will be recommended if clinically warranted..."

15.     On January 26, 2005 - S. Eckert, Ph.D. (USP Terre Haute) documented the following: "...Inmate continues to demand to be placed on Zoloft...This writer told inmate PURKEY that since his arrival to this institution he has not in the opinion of the Psychology Dept exhibited sxs consistent with Bipolar Disorder, depression or anxiety. Consequently,

Case 4:06-cv-08001-FJG     Document 54-1     Filed 12/07/07     Page 6 of 11

psychotropic Rx does not appear to be needed or appropriate at this time. This writer told inmate PURKEY that, I was willing to pull the inmate out for a private evaluation to further address his concerns. However, he REFUSED to be pulled out and seen by this writer to further address his concerns...Therefore, paradoxically, although the inmate is saying he wants to receive psychotropic Rx for a mental illness, (for which there, in the opinion of this writer, is no clear evidence) he is refusing to be seen by a Psychologist for further examination of the issue..."

16.     From February 11, 2005, to November 18, 2005 - S. Eckert, Ph.D. (USP Terre Haute) In this time frame Dr. Eckert made 11 entries in the PDS. Symptoms consistent with a major mental disorder or acute distress were NOT evident. Dr. Eckert specifically related that Mr. Purkey continued to typically present as guarded, caustic, and generally hostile.

17.     From December 15, 2005, to April 7, 2006 - S. Eckert, Ph.D. (USP Terre Haute) made five entries in the PDS. Symptoms consistent with a major mental disorder or acute distress were NOT evident. Dr. Eckert specifically related that Mr. Purkey typically presented as less guarded and increasingly civil.

18.     On May 5, 2006 - S. Eckert, Ph.D. (USP Terre Haute) documented the following: "...Inmate said he wanted back on Zoloft. However, he was not specific in explaining psychological problems he was having although he claimed that the Zoloft helps "level-out" his mood. This writer has not observed nor has staff reported to this writer information which would support significant fluctuations in his mood. Inmate is noted to be chronically irritable and it is this writer's opinion this irritability has it's genesis in Axis II characteristics (Anti-social Personality, Severe). Inmate will continue to be monitored during routine rds [rounds] and he will continue to be given svs [services] commensurate with his presenting needs. No referral to

medical concerning his request for psychotropic Rx appears to be warranted at this time but this writer will continue to assess this issue and a referral will be made if warranted in the future..."

19. From June 1, 2006, to November 17, 2006 - S. Eckert, Ph.D. (USP Terre Haute) made seven entries in the PDS. Symptoms consistent with a major mental disorder or acute distress were NOT evident. Dr. Eckert specifically related that Mr. Purkey typically presented guarded and hostile. For instance, on 6/30/06 Dr. Eckert wrote, "...He [Mr. Purkey] was in an inside work cage. He clapped his hands angrily together when this writer entered the room. He quickly turned away and ignored this writer..." Also, on 7/26/06 Dr. Eckert wrote, "..He [Mr. Purkey] was standing in his cell and presented as quietly hostile as he "waved" this writer away..."

20. On November 20, 2006 - S. Eckert, Ph.D. (USP Terre Haute) opined the following, "...Inmate has claimed a hx [history] of Bipolar Disorder, however, there is no clear documentation in his hx to support this diagnosis and the inmate has not presented with sxs consistent with Bipolar sxs since he was placed at this facility. Inmate does present clearly and prominent sxs of Antisocial Personality Disorder as seen in his baseline..."

21. From December 15, 2006, to September 19, 2007 - S. Eckert, Ph.D., Ashley Noble, Psy.D., Joseph Bleier, Ph.D., Dennis Profitt, Ph.D. (USP Terre Haute) made 13 entries in the PDS. Symptoms consistent with a major mental disorder or acute distress were NOT evident. At times, Mr. Purkey presented guarded and hostile. For instance, on 5/1/07 Dr. Noble wrote, "...He [Mr. Purkey] presented as extremely agitated and stated, "Get the f*** out of here!" He refused to communicate appropriately with this writer and the session was subsequently terminated...." Again on May 16, 2007, he refused to communicate with Dr. Noble and on July

Declaration of Steve Eckert, Ph. D.
Page 9

24, 2007, told Dr. Noble to "Beat it"during rounds.

22.    On September 26, 2007 - S. Eckert, Ph.D. (USP Terre Haute) documented the following: " "Inmate Purkey's attorney recently sent the Clinical Director at this facility a letter in which they expressed concern related to inmate Purkey's "psychiatric functioning." In addition the Clinical Director also received a report written by a Stephen E. Peterson, M.D. dated June 29, 2007. The attorney stated the following in the letter:

> "Dr. Peterson's recommendation speak for themselves, but I would like to underscore his core finding that Mr. Purkey should "restart medications to treat depression, anxiety, and mood swings. Respectively these would be an antidepressant, an anti-anxiety, and a mood stabilizer."

Consequently, on the above noted date this writer contacted the Chief Psychiatrist at MCFP Springfield, Dr. Sarrazin, telephonically...This writer relayed relevant clinical information to Dr. Sarrazin including: his current mental status and the fact that no Sxs of an Axis I Dx (including mood/anxiety) have been observed since his arrival to this facility on 2/9/04....Dr. Sarrazin agreed that a referral for Mr. Purkey to see a psychiatrist via tele-psychiatry did not appear to be appropriate at this time..."""

23.    From October 18, 2007, to November 14, 2007 - J. Bleier, Ph.D., Ashley Noble, Psy.D. (USP Terre Haute) documented four separate entries in the PDS concerning Mr. Purkey. Symptoms consistent with a major mental disorder or acute distress were NOT evident. Mr. Purkey continued to present similar to his baseline. It should be noted that he was given a private session by a psychologist on October 24, 2007.

**CLINICAL FORMULATION OF BOP DATA/CONCLUSION**

24.    Beyond Polysubstance Abuse the only Axis I diagnosis that inmate Purkey has received in the BOP was given him by Dr. Donovan at USP Leavenworth, who opined: Adjustment Disorder with Anxiety and Depressed Mood.  It should be noted that Dr. Donovan was never clear as to what the initial identifiable stressor was (which is required to support the diagnosis of an Adjustment Disorder) although he intimated that it may have been the fact that the inmate recently received the death sentence. — It should be noted that Adjustment Disorders typically are time-limited and generally persist for less than six months. If difficulties continue after six months, than the clinician has the option of qualifying the Adjustment Disorder as "Chronic." Another option the clinician has if the difficulties escalate would be to replace the Adjustment Disorder with a more solid/permanent diagnosis such as a Mood or Anxiety Disorder, for example. —

25.    Psychologists at Terre Haute first assessed Mr. Purkey in February 2004, and did not continue the diagnosis of Adjustment Disorder that Mr. Purkey briefly had at USP Leavenworth. Terre Haute psychologists concur with the findings of the Kansas Department of Corrections in 2000, as well as Forensic Evaluations conducted in 2002, by Dr. Pietz and Dr. Scronce, all of which support the diagnosis of Antisocial Personality Disorder while NOT finding Mr. Purkey to have a major mental illness. Further, this writer contacted Dr. Sarrazin, Chief Psychiatrist at MCFP Springfield in September 2007; Dr. Sarrazin concurred with this writer that a psychiatric referral did not appear to be warranted based on the clinical data this writer presented to him.

Declaration of Steve Eckert, Ph. D.
Page 11

26. In conclusion, Mr. Purkey can present as markedly irritable and hostile which periodically culminates in angry outbursts. The many records reviewed as well as his current mental status appear to clearly point to the fact that Mr. Purkey's irritability/hostility has its genesis in a maladaptive personality style (Antisocial Personality Disorder) rather than a mental illness. Consequently, there does NOT appear to be any mental health condition to treat pharmacologically. Mr. Purkey will continue to be monitored routinely by the FCC Psychology Department and will be afforded treatment commensurate with his presenting needs.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this 7 day of December 2007.

Steve Eckert, Ph.D.
Chief Psychologist
FCC Terre Haute, Indiana